Filed 9/17/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EVAN MINTON,<br><br>        Plaintiff and Appellant,<br>v.<br><br>DIGNITY HEALTH,<br><br>        Defendant and Respondent. | A153662<br><br>(City & County of San Francisco<br>Super. Ct. No. 17-558259) |

Plaintiff Evan Minton appeals the dismissal of his complaint against defendant Dignity Health, doing business as Mercy San Juan Medical Center, after the court sustained Dignity Health's demurrer without leave to amend. He contends the court erred in concluding that his complaint, based on Dignity Health's refusal to permit his doctor to perform a hysterectomy on him at one of its hospitals because of his sexual identity, fails to allege a violation of Civil Code[1] section 51, the Unruh Civil Rights Act (Unruh Act). Although the parties and several amici curiae regard the action as presenting a fundamental conflict between plaintiff's right to full and equal access to medical care and the hospital's right to observe its religious principles, we conclude that the present appeal may be resolved on narrower grounds. Without determining the right of Dignity Health to provide its services in such cases at alternative facilities, as it claims to have done here, we agree that plaintiff's complaint alleges that Dignity Health initially failed to do so and that its subsequent rectification of its denial, while likely mitigating plaintiff's damages, did not extinguish his cause of action for discrimination in violation of the Unruh Act. Accordingly, we shall reverse the judgment and remand for further proceedings.

---

[1] All statutory references are to the Civil Code.

1

## Factual and Procedural Background

Minton filed a verified complaint alleging a cause of action for violation of section 51, subdivision (b), which guarantees all persons within the jurisdiction of the state "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." His complaint alleged as follows: Dignity Health is a tax-exempt nonprofit corporation that owns and operates a large network of hospitals. Dignity Health does business in Sacramento County as Mercy San Juan Medical Center (Mercy). Minton is a transgender man diagnosed with gender dysphoria.

The complaint alleges that gender dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders. "The medical diagnosis for the feeling of incongruence between one's gender identity and one's sex assigned at birth, and the resulting distress caused by that incongruence, is 'gender dysphoria.' " The "widely accepted standards of care for treating gender dysphoria" include "medical steps to affirm one's gender identity and help an individual transition from living as one gender to another." Transgender men often decide to undergo hysterectomy as a gender-affirming surgical treatment for gender dysphoria and "[a]ccording to every major medical organization and the overwhelming consensus among medical experts, treatments for gender dysphoria, including surgical procedures such as hysterectomy, are effective and safe."

As a course of treatment for his diagnosis, Minton's physician, Dr. Lindsey Dawson, scheduled a hysterectomy for Minton at Mercy on August 30, 2016. The complaint alleges that it was "the professional opinion of Mr. Minton's hysterectomy surgeon and two mental health professionals who counseled Mr. Minton" that the "hysterectomy was medically necessary care to treat his diagnosis for gender dysphoria." On August 28, 2016, Minton mentioned to a nurse at Mercy that he is transgender. The following day, Mercy notified Dr. Dawson that the procedure was cancelled. Mercy's president, Brian Ivie, informed Dr. Dawson that she would "never" be allowed to perform a hysterectomy on Minton at Mercy because "it was scheduled as part of a course of

2

treatment for gender dysphoria, as opposed to any other medical diagnosis." Mercy routinely allows Dr. Dawson and other physicians to perform hysterectomies for patients on the bases of diagnoses other than gender dysphoria, including "for indications such as chronic pelvic pain and uterine fibroids." Mercy's refusal to allow Dr. Dawson to perform the hysterectomy caused Minton "great anxiety and grief." The complaint explains that the timing of Minton's hysterectomy was particularly sensitive because it needed to be completed three months before his phalloplasty that was scheduled for November 23.

Ivie suggested that Dr. Dawson could get emergency admitting privileges at Methodist Hospital, a non-Catholic Dignity Health hospital about 30 minutes from Mercy. Ultimately, Dr. Dawson was able to secure emergency surgical privileges and performed Minton's hysterectomy at Methodist Hospital on Friday, September 2.

The complaint concludes, "Defendant prevented Dr. Dawson from performing Mr Minton's hysterectomy to treat his diagnosis of gender dysphoria, a medical condition unique to individuals whose gender identity does not conform to the sex they were assigned at birth. [¶] Defendant does not prohibit physicians at its hospitals from treating other diagnoses with hysterectomy. [¶] By preventing Dr. Dawson from performing Mr. Minton's hysterectomy to treat gender dysphoria, defendant discriminated against Mr. Minton on the basis of his gender identity."

Dignity Health filed a demurrer to the complaint on the ground that Minton failed to allege a violation of section 51, subdivision (b). Dignity Health argued that as a Catholic hospital, Mercy is bound to follow its facially neutral "Ethical and Religious Directives for Catholic Health Care Services" (the Directives) issued by the United States Conference of Catholic Bishops.[2] The Directives prohibit direct sterilization and require that bodily and functional integrity be protected and preserved. Dignity Health asserted further that as soon as the issue arose, it promptly enabled Minton's physician to receive temporary surgical privileges to perform the procedure at another of its hospitals that was

---

[2] Without objection the court judicially noticed the Directives.

not subject to the Directives. Dignity Health also asserted that even if Minton had alleged a cause of action for violation of his civil rights, its federal and state constitutional rights of free exercise of religion and freedom of expression bar his claim.

The demurrer was sustained with leave to amend. The court found the complaint "alleged insufficient facts to show that Dignity Health's conduct in permitting Mr. Minton to receive a hysterectomy at another of its hospitals violated Dignity Health's obligation per Civil Code 51(b) to provide 'full and equal' access to medical procedures without regard to gender."

Minton then filed an amended complaint. The amended complaint alleges that gender dysphoria is "a medical condition unique to individuals whose gender identify does not conform to the sex they were assigned at birth and thus usually experienced by transgender people." More significantly, the amended complaint also clarifies the circumstances under which Minton alleges he was first denied treatment at Mercy and three days later received the hysterectomy at another Dignity Health hospital.[3] He alleges that defendant suggested the alternative hospital only after Minton and Dr. Dawson exerted pressure on Dignity Health through the media and political connections. The pleading alleges that on the morning of August 29, after receiving notice that Minton's surgery had been cancelled, Dr. Dawson made numerous phones calls, including one to Ivie who said that she (Dawson) would never be allowed to perform the hysterectomy on Minton at Mercy. That afternoon, she and Minton contacted local media agencies who aired his story. In response, Dignity Health issued a statement regarding the Directives

---

[3] Dignity Health incorrectly argues that the allegations in the amended complaint are inconsistent with allegations in the original complaint. In the fist complaint, Minton alleged that Ivie "suggest[ed]" that Dr. Dawson perform the surgical procedure at Methodist Hospital but did not allege when the suggestion was made. As indicated in the following text above, the amended complaint alleges that the suggestion was forthcoming only after efforts had been made to reverse the initial denial of hospital facilities. Similarly, the difficulty presented by Dr. Dawson's lack of privileges at Methodist Hospital arose only when efforts were made to rectify the initial refusal to provide facilities for Minton's operation.

which stated, "When a service is not offered the patient's physician makes arrangements for the care of his/her patient at a facility that does provide the needed service." (Italics omitted.) That afternoon, Minton's attorney also contacted the hospital about the cancellation of the surgery. During this flurry of advocacy on Minton's behalf, Dr. Dawson and others discussed with Ivie the possibility that Dr. Dawson could perform Minton's surgery at the alternative hospital. However, it was not immediately clear that this was a viable option because Dr. Dawson did not have surgical privileges at the other hospital, it would be difficult to fit the surgery into her busy schedule at Mercy, and it was unclear that the hospital was within the network coverage of Minton's insurance policy.

Dignity Health filed a demurrer to the amended complaint on the grounds previously asserted with respect to the original complaint. After briefing and argument, the demurrer was sustained without leave to amend. The court explained, "As was true with Mr. Minton's complaint, the first amended complaint fails to allege sufficient facts to show that Dignity Health's conduct in permitting Mr. Minton to receive a hysterectomy at one of its hospitals other than the hospital where Mr. Minton desired to receive that procedure violated Dignity Health's obligation per Civil Code § 51(b) to provide full and equal access to medical procedures without regard to gender." Citing *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145 (*North Coast*), the court explained, "Mr. Minton has not alleged, nor does it appear that it is reasonably possible for him to allege, that his receiving the procedure he desired from the physician he selected to perform that procedure three days later than he had planned and at a different hospital than he desired deprived him of full and equal access to the procedure, even assuming, as the court is required to do on demurrer, that Dignity Health's refusal to have the procedure performed at [Mercy] was substantially motivated by Mr. Minton's gender identity."

A judgment of dismissal was entered and Minton timely filed a notice of appeal. With the court's permission, amicus curiae briefs have been filed on Minton's behalf by the National Center for Lesbian Rights and the California Medical Association and in

5

support of Dignity Health by the Catholic Health Association of the United States, the Alliance of Catholic Health Care, and the Catholic Medical Association.

## Discussion

### I. Standard of Review

"On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the reviewing court assumes the truth of all facts properly pleaded by the plaintiff. [Citations.] We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged. [Citation.] We do not assume the truth of ' " 'contentions, deductions or conclusions of fact or law.' " ' [Citations.] We review the trial court's action de novo and exercise our own independent judgment whether a cause of action has been stated under any legal theory. [Citation.] We review the court's refusal to allow leave to amend under the abuse of discretion standard." (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985-986.)

### II. The Unruh Act applies to Minton's intentional discrimination claim.

" '[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims.' " (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 854.)

Dignity Health contends that Minton's pleading fails to allege a claim for intentional discrimination. It suggests that, at most, Minton has alleged a claim for disparate impact based on Mercy's adherence to the facially neutral Directives. (See *Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401, 1408 ["A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class."]; § 51, subd. (c) ["This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation. . . ."].)

In support of its demurrer, Dignity Health cites Directive No. 29 which states, "All persons served by Catholic health care have the right and duty to protect and preserve

their bodily and functional integrity. The functional integrity of the person may be sacrificed to maintain the health or life of the person when no other morally permissible means is available." (Endnote omitted.) Directive No. 53 states, "Direct sterilization of either men or women, whether permanent or temporary, is not permitted in a Catholic health care institution. Procedures that induce sterility are permitted when their direct effect is the cure or alleviation of a present and serious pathology and a simpler treatment is not available."

While Dignity Health may be able to assert reliance on the Directives as a defense to Minton's claim, the matter is not suitable for resolution by demurrer. (See *North Coast, supra*, 44 Cal.4th at p. 1161 [defendant physicians can "offer evidence at trial that their religious objections were to participating in the medical insemination of an unmarried woman and were not based on plaintiff's sexual orientation, as her complaint alleged."].)The allegations of the complaint are that Dignity Health refused to allow Dr. Dawson to perform the hysterectomy at Mercy hospital because of Minton's gender identity. The pleading alleges that Mercy allows doctors to perform hysterectomies as treatment for other conditions but refused to allow Dr. Dawson to perform the same procedure as treatment for Minton's gender dysphoria, a condition that is unique to transgender individuals. Denying a procedure as treatment for a condition that affects only transgender persons supports an inference that Dignity Health discriminated against Minton based on his gender identity. This is true even if the denial was pursuant to a facially neutral policy. (See *Koebke v. Bernardo Heights Country Club*, *supra*, 36 Cal.4th at p. 854 ["Evidence of disparate impact [can] be admitted in Unruh Civil Rights Act cases because 'such evidence may be probative of intentional discrimination in some cases.' "].) Moreover, if Dignity Health defends by asserting it was complying with the facially neutral Directives, Minton may attempt to establish that the hospital applied the Directives in a discriminatory manner. (*Id.* at pp. 854-855.)

Dignity Health's contention that its action was motivated by adherence to neutral Directives and not at all by Minton's medical condition or sexual orientation, contrary to the allegations in the complaint, is not susceptible to resolution by demurrer.

7

**III. The pleading alleges that Dignity Health denied Minton "full and equal" access to medical care**.

The trial court concluded that Minton's claim is precluded by dicta in the California Supreme Court's decision in *North Coast, supra,* 44 Cal.4th 1145. In *North Coast*, a patient sued a medical group and two of its employee physicians alleging their refusal to perform artificial insemination on her violated the Unruh Act. (*Id*. at pp. 1152-1153.) The patient was a lesbian and defendant doctors, citing their religious beliefs, refused to perform artificial insemination on the patient because of her sexual orientation. The question before the court was whether the physicians' First Amendment right to free exercise of religion exempted them from conforming their conduct to the Unruh Act's requirement to provide " 'full and equal accommodations, advantages, facilities, privileges, or services.' " (*Id*. at p. 1154.) The court held that the California Constitution's guarantee of free exercise of religion does not exempt physicians from conforming their conduct to the Unruh Act's antidiscrimination requirements even if compliance substantially burdens their religious beliefs. (*Id*. at p. 1158.) Applying a strict scrutiny analysis, the court explained that the Unruh Act "furthers California's compelling interest in ensuring full and equal access to medical treatment irrespective of sexual orientation, and there are no less restrictive means for the state to achieve that goal." (*Ibid.*) The court observed, however, "To avoid any conflict between their religious beliefs and the state Unruh Civil Rights Act's antidiscrimination provisions, defendant physicians can simply refuse to perform the . . . medical procedure at issue here for any patient of North Coast, the physicians' employer. Or, because they incur liability under the Act if they infringe upon the right to the 'full and equal' services of North Coast's medical practice [citations], defendant physicians can avoid such a conflict by ensuring that every patient requiring [the procedure] receives 'full and equal' access to that medical procedure through a North Coast physician lacking defendants' religious objections." (*Id*. at p. 1159.)

Based on this explanation in *North Coast,* the trial court here concluded: "Mr. Minton has not alleged, nor does it appear that it is reasonably possible for him to allege,

*that his receiving the procedure he desired from the physician he selected to perform that procedure three days later than he had planned and at a different hospital than he desired* deprived him of full and equal access to the procedure, even assuming . . . that Dignity Health's refusal to have the procedure performed at [Mercy] was substantially motivated by Mr. Minton's gender identity." (Italics added.)

The trial court's fundamental error is that it misconstrues Minton's pleading. Minton does not allege, nor does he contend on appeal, that providing him with access to alternative hospital facilities violated the Unruh Act. He alleges that the Act was violated on August 29, 2016, when defendant cancelled the scheduled procedure at Mercy and Mercy's president told Dr. Dawson that she would never be allowed to perform Minton's hysterectomy at Mercy. According to the amended complaint, that refusal was not accompanied by advice that the procedure could instead be performed at a different nearby Dignity Health hospital. At that point in time, according to the amended complaint, Minton was denied full and equal access to health care treatment, a violation of the Unruh Act.

Allegedly in response to pressures brought to bear on defendant, within a relatively short period of time Ivie proposed use of the facilities at the alternative hospital. In doing so, and in making those alternate facilities available three days later, defendant undoubtedly substantially reduced the impact of the initial denial of access to its facilities and mitigated the damages to which Minton otherwise would have been entitled. However, the steps that were taken to rectify the denial in response to pressure from Minton and from the media did not undo the fact that the initial withholding of facilities was absolute, unqualified by an explanation that equivalent facilities would be provided at an alternative location.

To be clear, we do not question the observation in *North Coast* that "[t]o avoid any conflict between their religious beliefs and the state Unruh Civil Rights Act's antidiscrimination provisions, defendant physicians . . . can avoid such a conflict by ensuring that every patient requiring [a procedure] receives 'full and equal' access to that medical procedure through a [hospital] physician lacking defendants' religious

9

objections." (*North Coast, supra,* 44 Cal.4th at p. 1159.) But the amended complaint alleges that Dignity Health failed to provide such assurance here, albeit for a relatively short period of time. The facts alleged in the amended complaint are that Dignity Health initially did not ensure that Minton had "full and equal" access to a facility for the hysterectomy. To the contrary, "he experienced a startling and painful notification that the surgery would not go forward." When his surgery was cancelled, he was subjected to discrimination. Dignity Health's subsequent reactive offer to arrange treatment elsewhere was not the implementation of a policy to provide full and equal care to all persons at comparable facilities not subject to the same religious restrictions that applied at Mercy. As Minton argued at the hearing on the demurrer, it cannot constitute full equality under the Unruh Act to cancel his procedure for a discriminatory purpose, wait to see if his doctor complains, and only then attempt to reschedule the procedure at a different hospital. "Full and equal" access requires avoiding discrimination, not merely remedying it after it has occurred.

Dignity Health argues that "[e]ven assuming Minton had alleged an Unruh Act violation, his claim still would be barred by the guarantees of religious freedom and freedom of expression enshrined in the California and federal Constitutions. (Cal. Const., art. I, §§ 2, 4; U.S. Const. amend. I . . .].) Using Unruh to force Mercy to violate the [ethical and religious directives] places an unacceptable burden on the constitutional right of religious freedom. Similarly, compelling Mercy to convey the message that a hysterectomy in these circumstances is consistent with the healing ministry of Jesus would violate Mercy's freedom of expression."

As explained above, upholding Minton's claim does not compel Dignity Health to violate its religious principles if it can provide all persons with full and equal medical care at comparable facilities not subject to the same religious restrictions. If it cannot and to the extent there is any compulsion, Dignity Health's arguments were soundly rejected in *North Coast, supra,* 44 Cal.4th 1145. The Supreme Court, applying a strict scrutiny analysis, held that any burden the Unruh Act places on the exercise of religion is justified by California's compelling interest in ensuring full and equal access to medical treatment

10

for all its residents, and that there are no less restrictive means available for the state to achieve that goal. (*Id.* at p. 1158; see also *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission* (2018) __ U.S. __, __ [138 S.Ct. 1719, 1727] ["While . . . religious and philosophical objections are protected [by the First Amendment], it is a general rule that such objections do not allow business owners and other actors in the economy and in society to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law."].) The court also rejected the contention that compelling doctors to perform a procedure on all persons "infringes upon their First Amendment rights to free speech and free exercise of religion." (44 Cal.4th at p. 1157.) Quoting from *Catholic Charities of Sacramento, Inc. v. Superior Court* (2004) 32 Cal.4th 527, 558, the court repeated, " 'For purposes of the free speech clause, simple obedience to a law that does not require one to convey a verbal or symbolic message cannot reasonably be seen as a statement of support for the law or its purpose.' " (44 Cal.4th at p. 1157.)

## Disposition

The judgment and the order sustaining the demurrer to the amended complaint are reversed. The trial court is directed to enter a new and different order overruling the demurrer. Plaintiff shall recover his costs on appeal.


POLLAK, P. J.


WE CONCUR:

TUCHER, J.
BROWN, J.


11

| | |
|---|---|
| Trial court: | San Francisco County Superior Court |
| Trial judge: | Honorable Harold E. Kahn |
| Counsel for Appellant: | COVINGTON & BURLING LLP, Christin Haskett and Lindsey Barnhart |
| | ACLU FOUNDATION OF NORTHERN CALIFORNIA, Elizabeth O. Gill and Christine P. Sun |
| | ACLU FOUNDATION OF SOUTHERN CALIFORNIA, Amanda Goad and Melissa Goodman |
| | AMERICAN CIVIL LIBERTIES FOUNDATION, Lindsey Kaley |
| | Julie Wilensky and Asaf Orr for National Center For Lesbian Rights and twelve additional nonprofit organizations as amicus curiae on behalf of Plaintiff and Appellant. |
| | DURIE TANGRI LLP, Benjamin B. Au, Laura E. Miller, Lauren E. Kapsky, Francisco J. Silva, Long X. Do and Lisa Matsubara for the California Medical Association on behalf of Plaintiff and Appellant. |
| Counsel for Respondent: | MANATT, PHELPS & PHILLIPS, LLP, Barry S. Landsberg, Harvey L. Rochman, Joanna S. McCallum and Craig S. Rutenberg |
| | David L. Shapiro |
| | GREENE & ROBERTS LLP, Stephen J. Green, Jr., STRADLEY RONON STEVENS & YOUNG, LLP, Mark E. Chopko and Jennifer Gniady for The Catholic Health Association of the United States and Alliance of Catholic Health Care as amicus curiae on behalf of Defendant and Respondent. |

A153662